IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ERIN GROVE,

      Plaintiff,

    v.

PATRICK R. DONAHOE,
Postmaster General,
United States Postal Service,

      Defendant.

Case No. 2:12-cv-202
JUDGE GREGORY L. FROST
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant's motion for summary judgment (ECF No. 21) and Plaintiff's memorandum in opposition (ECF No. 22). For the reasons set forth below, the Court finds the motion well taken.

### I. Background

Plaintiff, Erin Grove, began working for the United States Postal Service in 2007. At the time of the events at issue in this lawsuit, she was working as a Transitional Employee City Carrier stationed at the West Worthington facility, although she was at times assigned to the Beechwold facility. Plaintiff had come to work at the West Worthington facility as the result of the settlement of an Equal Employment Opportunity Commission ("EEOC") complaint that she had filed related to a previous termination of her employment. Resolution of that complaint involved expungement of the termination and the transfer to a work station of Plaintiff's choice.

While stationed at the West Worthington facility, Plaintiff requested an accommodation based on her being pregnant. In November 2008, Plaintiff provided Paula Williams, the Manager Customer Services who supervised Plaintiff at the West Worthington facility, a notice

that the amount of weight that she could lift at her job was restricted.  The postal service honored the restriction and provided accommodations to assist Plaintiff in fulfilling her duties while she was pregnant.

Despite these accommodations, Plaintiff allegedly sustained an injury on January 5, 2009, while Plaintiff was on her delivery route out of the Beechwold facility.  The next day, Plaintiff called Susan Thomas, West Worthington's Acting Supervisor Customer Services, and reported that she would be taking unscheduled sick leave.  Plaintiff asserts that she informed Thomas during this call that she had injured herself carrying mail, but Thomas asserts that Plaintiff never informed her that the sick leave was for a work-related injury.  Plaintiff returned to work after one day off, and although she was prescribed physical therapy, she did not attend physical therapy until a year after the purported injury.

Following her return to work, Plaintiff met with Laqueitta Packer Cumberlander, the West Worthington Supervisor Customer Services who was Plaintiff's first line supervisor.  This January 14, 2009 meeting was a pre-disciplinary interview concerned with absences by Plaintiff unrelated to her January 6, 2009 absence.  According to Packer Cumberlander, this interview was the first time that Plaintiff indicated that the January 6, 2009 absence was due to a work-related injury.

Just over a month later, on February 11, 2009, Plaintiff was issued a notice of removal for a failure to timely report a work-related injury.  The basis for the removal was the postal service's Employee Relations Manual provision that requires employees to report immediately to their supervisors any accident or injury in which that employee is involved, regardless of the

extent of the injury or the amount of damage involved.[1]  Plaintiff filed a union grievance on her removal, but that grievance ended with the union and postal service management agreeing that because Plaintiff was guilty of violating the policy, management had properly terminated her employment.

Plaintiff subsequently filed another complaint with the EEOC.  That complaint led to a hearing that produced a finding of no discrimination and no retaliation based on the prior EEOC filing.  After an unsuccessful appeal of that decision, Plaintiff filed the instant action on March 12, 2012.  In her pro se complaint, Plaintiff asserts three claims against Defendant, Patrick R. Donahoe, the Postmaster General: retaliation for filing an EEOC complaint in violation of Title VII, 42 U.S.C. §§ 2000e-2; pregnancy discrimination in violation of the Pregnancy Discrimination Act provisions of Title VII, 42 U.S.C. § 2000e(k); and violation of her rights under the Health Insurance Portability and Accountability Act ("HIPAA").  (ECF No. 4.) Defendant has filed a motion for summary judgment.  (ECF No. 21.)  The parties have completed briefing on the motion, which is ripe for disposition.

## II. Discussion

**A. Standard involved**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make

---

[1]  It does not appear that the Employee Relations Manual is contained in the record. Section 814.2, the applicable manual policy provision, is quoted in the "Step B Decision" issued in connection with Plaintiff's union grievance.  (ECF No. 21-2, at PAGEID # 274.)

a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### B. Analysis

Defendant first moves for summary judgment on Plaintiff's HIPAA claim and the grounds that there is no such private right of action to enforce HIPAA. This is correct. *See Johnson v. Dep'ts of Army & Air Force*, 465 F. App'x 644, 645 (9th Cir. 2012); *Acara v. Banks*, 470 F.3d 569, 571-72 (5th Cir. 2006); *Bradley v. Pfizer, Inc.*, 440 F. App'x 805, 809-10 (11th Cir. 2011); *Siegler v. Ohio State Univ.*, No. 2:11-cv-170, 2011 WL 1990570, at *8 (S.D. Ohio May 23, 2011). Accordingly, summary judgment in favor of Defendant is warranted on this claim.

Defendant also seeks summary judgment on Plaintiff's Title VII retaliation claim and her

discrimination claim under the Pregnancy Discrimination Act.  Defendant devotes a considerable amount of the briefing to arguing that Plaintiff has failed to establish a *prima facie* case under either claim.  This Court need not examine here the elements of these claims and whether Plaintiff has indeed failed to establish her claims because, even assuming arguendo that *prima facie* cases exist, Defendant is nonetheless entitled to summary judgment on both claims.

The Court reaches this conclusion as a result of the honest belief rule, which applies to claims of the sort involved here.  *See Mullins v. U.S. Bank*, 296 F. App'x 521, 526-27 (6th Cir. 2008).  Defendant has presented evidence that Plaintiff was terminated for a perceived violation of the workplace policy that required her to report her January 5, 2009 work-related injury to her supervisor immediately.  This is a legitimate non-discriminatory business reason.  *See Novotny v. Elsevier*, 291 F. App'x 698, 704 (6th Cir. 2008) (noting that violation of a company policy is a legitimate business reason for termination).  It is well settled that to puncture this reason and establish pretext, a "plaintiff must allege more than a dispute over the facts upon which his discharge was based.  [She] must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action."  *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001) (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998)).

The court of appeals has explained the essential inquiry related to the honest belief rule:

> In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned.  Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.
>
> If there is no material dispute that the employer made a "reasonably informed and considered decision" that demonstrates an "honest belief" in the proffered reason

5

>for the adverse employment action, the case should be dismissed since no reasonable juror could find that the employer's adverse employment action was pretextual.

*Braithwaite*, 258 F.3d at 494 (internal citation omitted) (quoting *Smith*, 155 F.3d at 807). There is no material dispute here over whether Defendant made a reasonably informed and considered decision that demonstrates an honest belief in the proffered reason for the treatment Plaintiff received.

The Court necessarily reaches this last conclusion despite the fact that there is a material dispute of fact over when Plaintiff informed her supervisor of her injury. As noted, Plaintiff asserts that she informed Susan Thomas of the work-related injury during their January 6, 2009 telephone call that took place one day after the injury. Thomas in turn asserts that Plaintiff had simply indicated that she was sick and would be absent from work that day. Plaintiff perhaps explained the discrepancy in part when she testified that she only learned that she had a back injury at her doctor's appointment, which took place after she spoke with Thomas. Other testimony indicates that Plaintiff only disclosed the fact of her injury after she returned to work during her unrelated pre-disciplinary interview with Laqueitta Packer Cumberlander. A factfinder need not unravel the evidentiary knot this conflicting testimony presents because other testimony establishes that even if all of these facts would favor Plaintiff, Defendant still believed that she had violated the policy of immediate reporting.

Defendant directs this Court to evidence that indicates that Packer Cumberlander, acting in her capacity as Plaintiff's first line supervisor, decided that Plaintiff's employment should be terminated. During the EEOC investigation, Packer Cumberlander described her January 14, 2009 interview with Plaintiff as follows:

>I explained to Erin the pre-disciplinary interview was related to failure to maintain

6

> a regular work schedule. She told me the reason she was absent was because she injured her back on January 5, 2009 while working at Beechwold Station. I asked her if she reported the accident to anyone at West Worthington or Beechwold. She said no. I asked her if she was aware that she was required to report accidents immediately. She said she didn't have an accident. She hurt her back carrying mail.

(ECF No. 21-9, at PAGEID # 311.) Responding to the question of why Plaintiff was issued a notice of removal, Packer Cumberlander responded with one and only one reason: "Failure to report [a]n accident." (*Id.*) When asked whether Plaintiff's prior EEOC activity was a factor in the termination decision, Packer Cumberlander indicated that she was not aware of that EEOC activity. (*Id.*) And when asked whether Plaintiff's medical condition or impairment was a factor in the termination decision, Packer Cumberlander responded, "No." (*Id.*)

Additional evidence indicates that Paula Williams, acting in her capacity as Plaintiff's second line supervisor, concurred in the termination decision. Williams stated in her EEOC affidavit:

> I concurred in the removal because [Plaintiff] did not follow US Postal Service policy of reporting an accident timely. The pre-disciplinary interview was about attendance. During the pre-disciplinary interview it was learned that she had an accident while working at Beachwold [*sic*] Station.

(ECF No. 21-8, at PAGEID # 304.) When then asked what facts she had considered in concurring with the termination decision, Williams stated:

> I considered the notes from the pre-disciplinary interview, I spoke with her Manager at Beachwold [*sic*] who told me that [Plaintiff] did not report an accident, Ms. Grove's own admission that she did not report the accident, and the local policy and procedure memo for reporting accidents.

(*Id.*) Williams also answered that Plaintiff's neither prior EEOC activity nor Plaintiff's medical condition or impairment were factors in the termination decision. (*Id.* at PAGEID # 306.)

The foregoing evidence supports that, even if Plaintiff indeed reported her accident/injury

7

to Thomas, the decision makers involved in the termination decision honestly held the belief that she had not. In deciding whether an employer reasonably relied on the particularized facts before it, "it is inappropriate for the judiciary to substitute its judgment for that of management." *Smith v. Leggett Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000). The principal function of the Court is not to second-guess the business judgment of an employer, but rather to determine "whether the employer gave an honest explanation of its behavior." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004). Therefore, the focus is not on whether the decisional process used by an employer was optimal or left no stone unturned; it is on "whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998). The decision makers here did, relying in part on Plaintiff's own statements in their investigation and concluding that Plaintiff had violated a company policy.

Plaintiff in turn has failed to meet her consequent burden of producing evidence showing that the postal service did not have an honest belief in its proffered reason for her termination. Instead, she argues only that an apparent prior willingness by the postal service to settle this case demonstrates pretext. The inference is unfounded. Absent actual evidence of pretext, there is no apparent discriminatory or retaliatory animus by Defendant. Thus, because there is no material dispute that Plaintiff's former employer made a reasonably informed and considered decision that demonstrates an honest belief in the proffered reason for her termination, the case should be dismissed since no reasonable juror could find pretext.

### III. Conclusion

The Court **GRANTS** Defendant's motion for summary judgment. (ECF No. 21.) The

Clerk shall enter judgment accordingly and terminate this case on the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE
